1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   PAUL S. COWIE, Cal. Bar No. 250131
3  PATRICIA M. JENG, Cal. Bar No. 272262
   JOHN ELLIS, Cal. Bar No. 269221
4  MELISSA HUGHES, Cal. Bar No. 315727
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4109
   Telephone:    415.434.9100
6  Facsimile:    415.434.3947
   Email        pcowie@sheppardmullin.com
7                 pjeng@sheppardmullin.com
                  jellis@sheppardmullin.com
8                 mhughes@sheppardmullin.com

9  Attorneys for Defendant MCGEE AIR
   SERVICES, INC.

10

11

12                   UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15  OMARI ROBINSON, individually, and on        Case No. 3:23-cv-4190
    behalf of other members of the general
16  public similarly situated,                  **DEFENDANT MCGEE AIR SERVICES,
                                                 INC.'S NOTICE OF REMOVAL**
17              Plaintiffs,
                                                 *[Removed from San Mateo Superior Court,
18        v.                                     Case No. 23-CIV-00922]*

19  MCGEE AIR SERVICES INC., a Delaware
    corporation; and DOES 1 through
20  10, inclusive,
                                                 Complaint Filed:  February 28, 2023
21              Defendants.                      FAC Filed:        July 18, 2023

22

23        **TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS**

24  **ATTORNEY OF RECORD:**

25        PLEASE TAKE NOTICE that Defendant McGee Air Services, Inc. ("Defendant") hereby

26  removes the action *Omari Robinson, et al. v. McGee Air Services Inc.*, pending in the Superior

27  Court of California, County of San Mateo, Case No. 23-CIV-00922, to the United States District

28  Court for the Northern District of California.  Removal is based on the Class Action Fairness Act

                                          -1-                   Case No. 3:23-cv-4190

("CAFA").  This Court has original subject matter jurisdiction over Plaintiff Omari Robinson's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000.  Accordingly, removal is proper based on the following grounds:

**STATEMENT OF JURISDICTION UNDER CAFA**

1.      This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant.

2.      Each of the foregoing conditions were satisfied at the time this action was initiated and now at the time of removal.

**CLAIMS AND PROCEDURAL HISTORY**

3.      On or about February 28, 2023, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of San Mateo, Case No. 23-CIV-00922 (the "Complaint").  On March 13, 2023, Plaintiff served a copy of the Summons, Civil Case Cover Sheet, Complaint, and Notice of Assignment For All Purposes, Designation as Complex Case, Setting of a Case Management and Trial Setting Conference, and Complex Fees Due, on Defendant.  Attached hereto as Exhibits **A-D** are true and correct copies of the Summons, Civil Case Cover Sheet, Complaint, and Designation as Complex Case, Setting of a Case Management and Trial Setting Conference, and Complex Fees Due.

4.      On or about April 12, 2023, Defendant filed its Answer to the Complaint in San Mateo County Superior Court and served its Answer on Plaintiff that same day.  Attached hereto as **Exhibit E** is a true and correct copy of Defendant's Answer to the Plaintiff's Complaint.

5.      Plaintiff's Complaint asserts claims arising out of their employment with Defendant for: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages); (3)

1  Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal

2  Periods); (4) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant

3  Wage Statements and Failure to Maintain Payroll Records); (5) Violation of California Labor

4  Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination); (6) Violation of California

5  Labor Code § 204 (Failure to Timely Pay Wages During Employment); (7) Violation of California

6  Labor Code § 2802 (Unreimbursed Business Expenses); (8) Violation of California Business &

7  Professions Code §§ 17200, et seq. (Unlawful Business Practices); and (9) Violation of California

8  Business & Professions Code §§ 17200, et seq. (Unfair Business Practices).

9        6.    On April 21, 2023, the Superior Court of California for the County of San Mateo

10  served Plaintiff and Defendant with Case Management Order #1, setting a Complex Case

11  Management Conference for July 7, 2023 and ordering Plaintiff and Defendant to file case

12  management conference statements by June 29, 2023.  Attached hereto as Exhibit **F** is a true and

13  correct copy of Case Management Order #1.

14        7.    On June 29, 2023, Plaintiff and Defendant filed a Joint Complex Case Management

15  Conference Statement in the Superior Court of California for the County of San Mateo.  Attached

16  hereto as Exhibit **G** is a true and correct copy of the Joint Complex Case Management Conference

17  Statement.

18        8.    On July 6, 2023, the Superior Court for the County of San Mateo served a Notice of

19  Complex Case Management Conference on Plaintiff and Defendant, continuing the conference to

20  August 18, 2023.  Attached hereto as Exhibit **H** is a true and correct copy of the Notice of Complex

21  Case Management Conference (Remote).

22        9.    On July 10, 2023, Plaintiff and Defendant entered into, and filed, a Stipulation for

23  Leave to File First Amended Class Action Complaint for Plaintiff to add a cause of action under

24  the Private Attorneys General Act ("PAGA").  Attached hereto as Exhibit **I** is a true and correct

25  copy of the Stipulation for Leave to File First Amended Class Action Complaint and Proposed

26  Order.

27

28

1        10.    On July 11, 2023, the Superior Court for the County of San Mateo served an Order

2    granting leave for Plaintiff to file the First Amended Complaint, on Plaintiff and Defendant.

3    Attached hereto as Exhibit **J** is a true and correct copy of the San Mateo Superior Court Order.

4        11.    On July 18, 2023, Plaintiff filed First Amended Class Action Complaint &

5    Enforcement Action Under PAGA in the Superior Court of the State of California, County of San

6    Mateo, Case No. 23-CIV-00922 (the "FAC").  On the same day, Plaintiff served the FAC on

7    Defendant via electronic service.  Attached as Exhibit **K** is a true and correct copy of the FAC

8    served on Defendant.  Plaintiff's FAC asserts claims for: (1) Violation of California Labor Code

9    §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 1182.12, 1194,

10   1197, 1197.1, and 1198 (Unpaid Minimum Wages); (3) Violation of California Labor Code §§

11   226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods); (4) Violation of California Labor

12   Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain

13   Payroll Records); (5) Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid

14   Upon Termination); (6) Violation of California Labor Code § 204 (Failure to Timely Pay Wages

15   During Employment); (7) Violation of California Labor Code § 2802 (Unreimbursed Business

16   Expenses); (8) Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§

17   2698, et seq.; (9) Violation of California Business & Professions Code §§ 17200, et seq.

18   (Unlawful Business Practices); and (10) Violation of California Business & Professions Code §§

19   17200, et seq. (Unfair Business Practices).

20       12.    Plaintiff's FAC is styled as a putative class action under Code of Civil Procedure §

21   382.  Plaintiff seeks to represent a putative class of "[a]ll persons who worked for Defendants as

22   non-exempt, hourly paid employees in California, at any time from February 7, 2021, until the

23   date of trial." ("Putative Class").  (FAC, ¶ 44.)  Within the Putative Class, Plaintiff also seeks to

24   represent "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in

25   California and who received at least one wage statement within one (1) year prior to the filing of

26   the initial complaint until the date of trial." ("Subclass") (*Id*, ¶ 45.)

27

28

13.    On or about August 16, 2023, Defendant filed its Answer to the FAC in San Mateo County Superior Court and served its Answer on Plaintiff that same day.  Attached hereto as **Exhibit L** is a true and correct copy of Defendant's Answer to the Plaintiff's Complaint.

14.    **Exhibits A-L** are true and correct copies of all process, pleadings, and orders served upon Defendant or filed by Defendant in accordance with 28 U.S.C. § 1446(a).  A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of San Mateo.  No other proceedings have been held in this action.

## DIVERSITY JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

15.    The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2).  As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

16.    Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal.  Defendant is only required to submit a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  A plausible allegation of the relevant jurisdictional facts is sufficient in a notice of removal.  *Dart Cherokee*, 135 S.Ct. 547 at 554.  Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations.  *Id.*

## MINIMUM DIVERSITY EXISTS

17.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state.  *See* 28 U.S.C. § 1332(d).

18.    For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. §

1332(c)(1).  In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination."  *Id.* at 93.

19.    Defendant is a corporation incorporated under the laws of Delaware.  Defendant maintains its principal place of business in Washington.  Defendant's corporate headquarters are located in Washington, and its administrative functions (including operations and planning) are conducted in Washington.  Defendant's corporate and executive officers are employed in Washington and the actual direction, control, and coordination for Defendant take place in Washington.  These facts were true at the time the action was instituted, and remain true today at the time of removal to federal court.  Thus, under the foregoing standard Defendant is a citizen of Washington and Delaware for purposes of removal, and not a citizen of California.

20.    To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  According to the Complaint, Plaintiff is a resident of Oakland, in Alameda County, California.  Upon information and belief, Plaintiff is a resident of, domiciled in, and citizen of California.  (Complaint, ¶ 4.)  The Complaint also alleges that Plaintiff was employed at Defendant's location in the San Francisco Airport, in San Mateo County, California.  (*Id.*)

21.    Plaintiff also purports to represent classes of "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees ***in California***" therefore asserting that the putative class members are also California residents, both at the time the action was initiated and now at the time of this removal.  Therefore, at the date on which this civil action was filed, and at

1  the time of this removal, at least one member of the putative class was a citizen of California and

2  not a citizen of Washington or Delaware.

3       22.    The presence of "Doe" defendants has no bearing on diversity with respect to

4  removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to

5  obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

6  ### THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

7       23.    Defendant employed approximately **2,700** putative class members who worked at

8  least one day in California during the relevant time period. Accordingly, the putative class meets

9  CAFA's requirement of a class containing at least 100 members.

10 ### THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

11      24.    Pursuant to CAFA, the amount in controversy is satisfied when the aggregated

12 claims of the individual members in a class action exceed the sum of $5,000,000. *See* 28 U.S.C. §

13 1332(d)(6). A defendant is not obliged to "research, state, and prove the plaintiff's claims for

14 damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish

15 the amount in controversy by setting forth a plausible allegation in the notice of removal that the

16 amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart*

17 *Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a

18 plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and

19 evidentiary submissions are required only if "the plaintiff contests, or the court questions, the

20 defendant's allegations"). "In measuring the amount in controversy, a court must 'assume that the

21 allegations of the complaint are true and assume that a jury [will] return[] a verdict for the plaintiff

22 on all claims made in the complaint.'" *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,

23 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Jackson v. American Bankers Ins. Co. of*

24 *Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997). "The ultimate inquiry is what amount is put

25 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Muniz v.*

26 *Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) (original emphasis); *see also*

27 *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding

28 the amount in controversy, the Court looks to what the plaintiff has alleged, not what the

1  defendants will owe.").

2      25.    Plaintiff's pleading in this action fails to affirmatively disclose the amount in

3  controversy or information from which Defendant could readily ascertain the amount in

4  controversy without independent investigation and analysis.  Plaintiff's pleading is therefore

5  "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the

6  meaning of *Harris v. Bankers Life & Cas. Co.*,425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA*

7  *Hollywood Med. Ctr., L.P.*, 720 F.3d1121 (9th Cir. 2013).

8      26.    Here, Defendant alleges there is more than $5,000,000 in controversy, not including

9  costs and/or interest sought by Plaintiff.  Defendant provides the following calculations only to

10  demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in

11  controversy under CAFA jurisdiction.  Defendant makes no admission of any liability or damages

12  with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.

13  Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if

14  any, should Plaintiff prevail with respect to any of his claims.

15      27.    <u>Unpaid Overtime</u>:  Plaintiff alleges that Defendant had, and continues to have, a

16  company-wide policy and/or practice of discouraging and impeding Plaintiff and the putative class

17  members (PCMs) from recording hours worked that were outside of their scheduled shifts in order

18  to limit the amount of overtime employees could accrue.  (FAC, ¶ 57).  Plaintiff further alleges

19  that Defendant discouraged overtime accrual by, among other things, altering and/or falsifying

20  timesheets, and requiring Plaintiff and PCMs to complete assigned tasks outside of their scheduled

21  shifts without being compensated for the time they worked.  (*Id.*)  Plaintiff also alleges that

22  Defendant had, and continues to have, a company-wide policy and/or practice of understaffing

23  their locations while assigning heavy workloads, thereby requiring Plaintiff and the PCMs to

24  continue performing job duties during their unpaid meal periods.  (*Id.*, ¶ 59).

25      28.    Plaintiff does not, however, provide any details as to how many hours per day or per

26  week he and the PCMs allegedly worked without compensation.  Although Defendant denies

27  Plaintiff's allegations or that Plaintiff or the PCMs are entitled to any relief, it is reasonable to

28

assume, based on Plaintiff's allegations, that employees worked, at minimum, one hour of unpaid overtime per week, which amounts to a mere twelve minutes per shift worked.

29. Defendant independently determined based on its own business records that the Putative Class worked approximately 92,000 weeks during the relevant time period.

30. In California, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. *See* Labor Code § 510(a).

31. Using a conservative assumption that each employee was paid at the hourly minimum wage in California in 2022 of $15, the amount in controversy for Plaintiff's claim for failure to pay overtime wages to Plaintiff and the PCMs is approximately **$2,070,000** (92,000 work weeks x $15 x 1.5 overtime premium = $2,070,000), based on the failure to pay overtime wages cause of action.

32. <u>Unpaid Minimum Wage</u>:  Plaintiff alleges that due to Defendant's restrictions on overtime accrual, Defendant systematically failed to pay Plaintiff and the PCMs for actual hours worked before and after their scheduled shifts, because these hours were not accurately recorded and/or shaved down, resulting in the failure to pay Plaintiff and the PCMs minimum wages for all hours actually worked.  (FAC, ¶ 65).

33. Here again, Plaintiff does not provide any details as to how many hours per day or per week he and the PCMs allegedly worked without compensation.  Although Defendant denies Plaintiff's allegations or that he or the PCMs are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations of systematic, company-wide policy and practice of discouraging and impeding Plaintiff and the PCMs from recording hours worked, that employees worked, at minimum, one hour of unrecorded unpaid time per week.  *See Lindsey v. WC Logistics, Inc.*, 586 F. Supp. 3d 983, 994 (N.D. Cal. 2022) ("it is reasonable to assume a 100% violation rate if the complaint specifically alleges a 'uniform' practice and the plaintiff offers no competent evidence in rebuttal to a defendant's showing.") (internal quotations omitted).  Based on a minimum of 92,000 weeks worked by the PCMs during the relevant period and one hour of alleged unpaid

1    work per week at the rate of $15/hour, Plaintiff's minimum wage claim places at least $1,380,000

2    in alleged damages in controversy (92,000 weeks x 1 hour x $15/hour = $1,380,000).

3       34.    For purposes of the amount in controversy, this number must be doubled, because

4    Plaintiff claims an entitlement to liquidated damages under Cal. Labor Code § 1194.2.  (FAC, ¶

5    68).  Cal. Labor Code § 1194.2 provides that "[i]n any action under Section 98, 1193.6, 1194, or

6    1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by

7    an order of the commission or by statute, an employee shall be entitled to recover liquidated

8    damages in an amount equal to the wages unlawfully unpaid and interest thereon," unless the

9    employer "demonstrates to the satisfaction of the court or the Labor Commissioner that the act or

10   omission giving rise to the action was in good faith and that the employer had reasonable grounds

11   for believing that the act or omission was not a violation of any provision of the Labor Code…"

12   When the alleged liquidated damages are accounted for, Plaintiff's minimum wage claim places at

13   least **$2,760,000** in controversy ($1,380,000 x 2 = $2,760,000).

14       35.    <u>Unprovided Meal Periods</u>:  Plaintiff alleges that Defendant had, and continues to

15   have, company-wide policies and/or practices of understaffing their locations, assigning heavy

16   workloads, and failing to schedule meal periods, which have resulted in a lack of meal period

17   coverage and prevented Plaintiff and PCMs from taking all timely, uninterrupted meal periods to

18   which they were entitled.  (FAC, ¶ 73).  Specifically, Plaintiff alleges that Plaintiff sometimes had

19   to forgo his meal periods; on the days Plaintiff was able to take his meal periods, he sometimes

20   took his meal periods late, after the end of his fifth hour of work; and that meal periods were

21   occasionally cut short by his supervisors asking him to return to work and complete cleaning tasks

22   pursuant to Defendant's expectations.  (*Id.*)  Additionally, Plaintiff alleges that because Defendant

23   frowned upon employees accruing meal period penalties, Defendant pressured employees to clock

24   out for meal periods, upon threat of discipline, or adjusted their time records to reflect compliant

25   meal periods, regardless of whether they had received a compliant meal period, such that Plaintiff

26   and the PCMs were required to clock out for meal periods to record that they had received

27   compliant meal periods on shifts when they had not received these timely meal periods.  (*Id.*, ¶

28   74).

36.     The court in *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4-5 (C.D. Cal. 2015) found that allegations that a defendant "sometimes" failed to provide meal periods supported a reasonable assumption that the plaintiff is claiming at least 2.5 unprovided meal periods (and failure to pay the applicable premium) per week.  *Oda* held that "[h]ad Plaintiffs wanted to avoid removal by limiting their recovery, they could have pled facts narrowing the scope of their claims… However, they did not." *Id.* at *5.  The same is true here.

37.     In California, an employer may not employ a non-exempt employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes.  See Labor Code § 512(a).

38.     The consequence of failing to provide a meal period under California law is that the employer must pay one additional hour of premium pay at the employee's regular rate of compensation for each day in which at least one meal period was not provided.  Cal. Labor Code § 226.7(c).

39.     Based on 92,000 workweeks, 2.5 alleged meal period violations per week, and at least the minimum wage rate of $15/hour, the amount in controversy on Plaintiff's meal period claim is at least **$3,450,000** (92,000 weeks x 2.5 alleged violations x $15/hour  = $3,450,000).

40.     <u>Failure to Provide Accurate Itemized Wage Statements</u>:  Plaintiff alleges that Defendant did not record the time Plaintiff and the Subclass of PCMs spent working off the clock and deducted time from their time records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), and therefore that Defendant did not list the correct amount of gross wages, total hours worked, or the net wages earned by Plaintiff and the PCMs.  (FAC, ¶¶ 82, 83.)  Plaintiff also alleges that Defendant did not calculate Plaintiff's and the PCMs' regular rate of pay correctly for purposes of paying meal period premiums.  (*Id.*, ¶ 84).  Based on these allegations, Plaintiff claims that Defendant failed to provide Plaintiff and the PCMs with accurate itemized wage statements reflecting all wages owed.

41.     Under Cal. Labor Code § 226(e), an employee who suffers injury as a result of an intentional and knowing failure by his or her employer to provide complete and correct wage

1    statements may recover $50 for the initial pay period in which a violation occurs and $100 for

2    each violation in a subsequent pay period, up to a maximum of $4,000.

3        42.    Because Plaintiff's wage statement claim is derivative of Plaintiff's claims for

4    unpaid wages and unprovided meal periods, and because Plaintiff's allegations support an

5    assumption of unpaid wages per employee each week, and an assumption of 2.5 unprovided meal

6    periods and unpaid meal period premiums per week, it is reasonable to assume that Plaintiff

7    claims that every wage statement issued to the putative class was defective in some manner. *See*

8    *Wicker v. ASC Profiles LLC,* 2021 WL 1187271, at *4 (E.D. Cal., 2021) ("Therefore, because it is

9    more likely than not that putative class members each suffered one meal and one rest break

10   violation per week, then Defendants' 100 percent wage statement violation rate against each

11   terminated class member is reasonably supported by the evidence."); *see also Nunes v. Home*

12   *Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. 2019) ("Given the allegations, it is

13   reasonable to assume the class members suffered at least one violation (e.g. one missed meal or

14   rest break) per pay period.  This Court therefore finds, based on the Complaint, [defendant]'s

15   assumption of a 100 percent violation rate [for plaintiff's wage statement claim] is reasonable.");

16   *see also Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *8 (S.D. Cal. 2019)

17   ("Therefore, since one missed meal and rest period was reasonable, that would mean that every

18   wage statement was inaccurate and subject to the penalties.  Accordingly, the Court concludes that

19   a 100% violation rate is a reasonable assumption based on these claims.").

20       43.    The statute of limitations period on Plaintiff's wage statement claim is one year.

21   Cal. Code Civ. Proc. § 340; *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *7

22   (N.D. Cal., 2021).

23       44.    Defendant independently determined based on its own business records that during

24   the time period February 28, 2022 (one year prior to filing of this action) through the date of this

25   Notice, there were at least 54,000 weeks worked by the members of the Subclass.  Throughout the

26   entire relevant period, Defendant paid and issued wage statements to its non-exempt employees in

27   California once every two weeks.  Therefore, there are at least 27,000 wage statements at issue

28   (54,000 weeks ÷ 2 weeks per wage statement = 27,000 wage statements).  Defendant employed at

least 1,750 putative class members who received at least one wage statement during the time period February 28, 2022 through the date of this Notice, meaning that 1,750 wage statements are subject to the $50 penalty and the remainder are subject to the $100 penalty provided for in Cal. Labor Code § 226(e)(1).[1]  *Id.*  Plaintiff's wage statement claim therefore places at least **$2,612,500** in controversy ([1,750 putative class members x $50] + [[27,000 wage statements – 1,750 putative class members] x $100] = $2,612,500).[2]

45.    <u>Waiting Time Penalties:</u>  Plaintiff also alleges that Defendant failed to timely pay wages to Plaintiff and the PCMs upon separation of employment, for which Defendant is allegedly liable for waiting time penalties equal to one workday's wages for each day the wages were not paid, up to a maximum of 30 days' wages.  (FAC, ¶ 78)

46.    Cal. Labor Code § 201(a) requires an employer to pay a discharged employee all "wages due and unpaid at the time of discharge…immediately."  Cal. Labor Code § 202(a) requires an employer to pay an employee who quits all outstanding earned wages within 72 hours of quitting, or at the time of quitting if the employee gave at least 72 hours' notice.  Cal. Labor Code § 203(a) provides that "[i]f n employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201…202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  The California Court of Appeal has interpreted Cal. Labor § 203 to provide for wages that would ordinarily be earned on 30 full workdays, even when the 30 day period includes days that the employee would not have worked had they remained employed.  *Mamika v. Barca*, 68 Cal. App. 4th 487, 489 (1998).

---

[1] There are 74 weeks between February 28, 2022 and the date of this Notice, meaning that no putative class member has more than 37 wage statements at issue during this period.  Because 41 wage statements are required to reach the $4,000 maximum penalty under Cal. Labor Code § 226(e)(1), it is impossible for any putative class member to reach the cap in the time period Defendant uses to estimate the amount in controversy.  The $4,000 cap is therefore irrelevant to Defendant's amount in controversy calculation.

[2] Extrapolating the wage statement claim through trial would add even more to the amount in controversy, likely resulting in another $1 million at issue for this claim.

47.    Because Plaintiff's section 203 waiting time penalty claim is derivative of his other allegations, it is reasonable to assume that every discharged or quitting employee had at least some alleged unpaid wages and therefore would be entitled to waiting time penalties for up to 30 days until this action was commenced, if Plaintiff prevails.  *See Amezcua v. CRST Expedited Inc.*, 2023 WL 2002085, at *7 (N.D. Cal. 2023) (derivative waiting time allegations supports 100% assumed violation rate for purposes of removal*); see also Salonga v. Aegis Senior Communities, LLC*, 2022 WL 1439914, at *4 (N.D. Cal. 2022) ("[C]ourts in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees.").  Therefore every putative class member who was either discharged or quit more than 33 days prior to the filing of this action would accrue 30 days of waiting time penalties, if Plaintiff proves his allegations.[3]

48.    Defendant independently determined based on its business records that between February 7, 2021 and December 31, 2021, at least 560 Putative Class members quit or were discharged.  Based on a minimum wage rate of $14/hour in effect in California in 2021 and a typical 8 hour workday, Plaintiff's waiting time allegations place at least <u>$1,881,600</u> in controversy for the period February 7, 2021 through December 31, 2021 (560 discharged or quitting employees x $14/hour x 8 hours per day x 30 days = $1,881,600).  Between January 1, 2022 and January 26, 2023 (33 days prior to the filing of this action), at least 890 putative class members quit or were discharged.  Based on a minimum wage rate of $15/hour in effect in California in 2022 and a typical 8 hour workday, Plaintiff's waiting time allegations place at least <u>$3,204,000</u> in controversy for the period January 1, 2022 through January 26, 2023 (890 discharged or quitting employees x $15/hour x 8 hours per day x 30 days = $3,204,000).  In sum, Plaintiff's waiting time claim places **$5,085,600** in controversy.  ($1,881,600 + $3,204,000 =

---

[3] The reason for 33 days prior to filing rather than 30 is that unpaid wages do not become due to a quitting employee under Cal. Labor Code § 202 for 72 hours after quitting, unless 72 hours' notice is given.

$5,085,600). Thus, by itself, Plaintiff's waiting time penalty claim exceeds the jurisdictional minimum.

49. <u>Failure to Reimburse Business Expenses</u>: Plaintiff alleges that he and the PCMs incurred costs related to the laundering and upkeep of their uniforms. (FAC, ¶ 103). However, the FAC is indeterminate as to the amount of business expenses allegedly incurred by Plaintiff and the PCMs such that Defendant is unable to determine the amount in controversy placed at issue by Plaintiff's claim for unreimbursed business expenses. Nevertheless, as outlined in detail above, the amount in controversy placed at issue by Plaintiff's other claims greatly exceeds the jurisdictional minimum under CAFA. The claim for failure to reimburse would add still more to the amount in controversy.

50. <u>Plaintiff's Claim for Attorneys' Fees</u>: For purposes of federal subject matter jurisdiction, "[t]he amount in controversy includes the amount of damages in dispute, as well as attorneys' fees, if authorized by statute or contract." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). The Ninth Circuit has held "that attorneys' fees were properly included in the amount in controversy in a class action." *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (abrogated on other grounds *by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013)). In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy. Plaintiff's causes of action permit Plaintiff to recover attorneys' fees. *See* Cal. Lab. Code §§ 226 & 1194; *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine."). Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark when calculating the attorneys' fees in controversy, including for claims arising under state law. *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Laffitte*

*v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 483 (2016) (approving percentage of recovery measure of fees in common fund cases).

51.     Based on the reasonable estimate of the amount in controversy placed at issue in the FAC outlined above, a 25% fee award would by approximately $4,000,000 ($15,978,100 amount in controversy x 25% = $3,994,525).

52.     The amount in controversy requirement for CAFA is therefore easily satisfied.

## NONE OF THE CAFA EXCEPTIONS APPLY

53.     The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)–(5).  However, none of these exceptions are applicable here.

54.     The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state.  28 U.S.C. § 1332(d)(3). The second is a mandatory exception under which a Court shall decline to exercise jurisdiction if more than two-thirds of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state.  28 U.S.C. § 1332(d)(3).

55.     Here, the action was filed in California and Defendant is a citizen of Washington and Delaware for purposes of removal, and not a citizen of California.  Therefore, these exceptions do not apply.

56.     Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or putative classes which number less than 100 in the aggregate.  28 U.S.C.§§ 1332(d)(5)(A)–(B).  Given that Defendant is not a governmental entity, and the proposed class well exceeds 100 members, these exceptions also do not apply.

## SUPPLEMENTAL JURISDICTION

57.     Under 28 U.S.C. § 1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district
> courts have original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that are so related to
> claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

58.    To the extent the Court concludes it lacks original jurisdiction over any of Plaintiff's claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiff's causes of action emanate from and form part of the same "case or controversy" as Plaintiff's other claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiff's FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

59.    Here, the Court has supplemental jurisdiction over Plaintiff's non-class PAGA claim, because those claims emanate from and form part of the same "case or controversy" as Plaintiff's class claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Plaintiff's PAGA claim seeks to recover civil penalties arising from the same exact alleged wage and hour violations alleged in Plaintiff's class claims. *See Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claim is therefore properly within the Court's supplemental jurisdiction."). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock*, 2007 WL 1989635, at *3.

60.    None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case. Plaintiff's PAGA claim does not raise novel or complex issues of State law different from the class claims, they do not substantially predominate over the named Plaintiff's individual claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction. The exceptions

1    enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline

2    to exercise supplemental jurisdiction. *Exec. Software N. Am.*, 24 F.3d at 1556.

3        61.    For these reasons the Court has supplemental jurisdiction over any claims pleaded

4    by Plaintiff falling outside of the Court's original jurisdiction, including but not limited to

5    Plaintiff's claim for civil penalties under PAGA, Labor Code §§ 2699, *et seq.* (FAC, ¶¶ 107-128).

6                                        **TIMELINESS OF REMOVAL**

7        62.    Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case

8    may be removed—during the first thirty days after the defendant receives the initial pleading or

9    during the first thirty days after the defendant receives a paper 'from which it may first be

10   ascertained that the case is one which is or has become removable' if 'the case stated by the initial

11   pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir.

12   2005).

13       63.    When a pleading or paper is "indeterminate," a defendant is under no duty to

14   investigate the facts showing the basis for removal, and the 28 U.S.C. § 1446(b) 30-day windows

15   do not begin to run. *Id.* at 692–95. "[N]otice of removability under § 1446(b) is determined

16   through examination of the four corners of the applicable pleadings, not through subjective

17   knowledge or a duty to make further inquiry." *Id.* at 694. This reasoning was confirmed in *Roth

18   v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "Even if a defendant

19   could have discovered grounds for removability through investigation, it does not lose the right to

20   remove because it did not conduct such an investigation and then file a notice of removal within

21   thirty days of receiving the indeterminate document."

22       64.    It is well-settled that a pleading or paper that discloses grounds to remove on a basis

23   other than CAFA does not start any deadline to remove under the jurisdiction conferred by CAFA.

24   *See Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018) ("These general removal

25   principles apply equally in the context of removals premised upon CAFA . . .'a defendant may

26   remove a case from state court within thirty days of ascertaining that the action is removable under

27   CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative

28   basis for federal jurisdiction.'") (quoting *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180

(9th Cir. 2015)); *see also Castro v. ABM Industries, Inc.*, 2017 WL 4682816, at \*3 (N.D. Cal. Oct. 19, 2017) (finding that defendant timely removed upon learning the amount in controversy was over $5 million from plaintiff's trial plan).  *Jordan* also confirms that CAFA must be construed liberally in favor of removal.  *Id.* at 1183–84.

65.    *Roth* holds that the two 30-day windows in 28 U.S.C. § 1446(b) are not the exclusive times in which a defendant can remove.  Thus, if a defendant never receives a pleading or other paper affirmatively disclosing the grounds for removal under CAFA, the defendant can remove under CAFA at any time.  *Roth*, 720 F.3d at 1126 ("A CAFA case may be removed at any time, provided that neither of the two 30-day periods under § 1446(b)(1) and (b)(3) has been triggered."); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("[W]e will not 'charge defendants with notice of removability until [they have] received a paper that gives them enough information to remove'"); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

66.    The only papers that start the second 30-day window under 28 U.S.C. § 1446(b) are those received from other parties in the litigation.  *Calkins v. Google, Inc.*, 2013 WL 3556042, at \*3 (N.D. Cal. 2013) ("[T]he plain language of the statute is clear that 'other paper' refers to a document received from another person or party in connection with the litigation."); *see also Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016) ("Every circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper provided *by the plaintiff* to the defendant.") (original emphasis).  That a defendant can discern or has discerned removability from its own records does not begin either of the non-exclusive 30-day windows for removal.  *See Roth*, 720 F.3d at 1126; *see also Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at \*4 (C.D. Cal., 2015) ("The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law.") The Ninth Circuit in *Harris*, 425 F.3d at 495, adopted the following rule from the Fourth Circuit:

1  "We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry

2  that could degenerate into a mini-trial regarding who knew what and when.  Rather, we will allow

3  the court to rely on the face of the initial pleading and on the documents *exchanged in the case by*

4  *the parties* to determine when the defendant had notice of the grounds for removal, requiring that

5  those grounds be apparent within the four corners of the initial pleading or subsequent paper."

6  (quoting *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added).

7        67.      None of Plaintiff's pleadings in this action, nor any other paper which Plaintiff

8  served or delivered to Defendant, affirmatively disclosed a ground for CAFA removal.  Thus,

9  Defendant never received any pleading, motion, order, or other paper affirmatively disclosing that

10  the amount in controversy in this action exceeds $5,000,000.  Accordingly, the second 30-day

11  window under 28 U.S.C. § 1446(b) has not yet started, and for the foregoing reasons, this notice of

12  removal is timely and otherwise procedurally proper.

13                              **JOINDER**

14        68.      Defendant is not aware of any other defendant that exists and who has been named

15  in the Complaint or who has been served with a summons and the Complaint.  The only

16  defendants named in Plaintiff's Complaint are Defendant and fictitiously named Doe defendants,

17  whose presence is disregarded for purposes of removal.

18                              **VENUE**

19        69.      Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

20              **NOTICE TO PLAINTIFF AND STATE COURT**

21        70.      This Notice of Removal will be promptly served on Plaintiff and filed with the

22  Superior Court of the State of California in and for the County of San Mateo.

23        71.      In compliance with 28 U.S.C. section 1446(a), true and correct copies of all

24  "process, pleadings, and orders" from the state court action served on Defendant or filed by

25  Defendant are attached hereto as **Exhibits A through L.**

26        72.      In the event this Court has any question regarding the Notice of Removal, Defendant

27  requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity

28  to fully brief the basis for this removal and address any questions the Court may have.

1    WHEREFORE, having provided notice as is required by law, the above-entitled action is

2    removed from the Superior Court for the County of San Mateo to this Court.

3    Dated: August 17, 2023          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4                                     By _____
                                                  */s/ Paul S. Cowie*
5                                              PAUL S. COWIE
                                             PATRICIA M. JENG
6                                               JOHN ELLIS
                                             MELISSA HUGHES
7                                         Attorneys for Defendant
                                         MCGEE AIR SERVICES INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4885-1025-0328.8        DEFENDANT MCGEE AIR SERVICES, INC.'S NOTICE OF REMOVAL